UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WILLIAM BOURLAND, <br><br>Plaintiff, <br>v. <br>HUMBOLDT COUNTY, <br><br>Defendant. | Case No. 3:13-cv-00660-MMD-WGC <br><br>ORDER <br><br>(Def.'s Mot. for Summary Judgment – Dkt. no. 41) |

## I. SUMMARY

Plaintiff sues Humboldt County for the conduct of its district attorney in sending a letter to Plaintiff's supervisor, Chief of the Winnemucca Police Department ("WPD"), that Plaintiff was a "*Brady* cop." He asserts claims for First Amendment retaliation (second claim) and defamation plus (fourth claim) pursuant to 42 U.S.C. § 1983, and three state law claims. Before the Court is Humboldt County's Motion for Summary Judgment ("Motion"). (Dkt. no. 41.) Plaintiff has opposed and Defendant has replied. (Dkt. no. 45, 48.) For the reasons discussed below, the Motion is granted in part.

## II. BACKGROUND

Plaintiff is a law enforcement officer employed by the City of Winnemucca. (Dkt. no. 32 at 1.) Plaintiff was previously employed by Humboldt County in its Sheriff's Office ("County Sheriff") from August 2005 until February 2011. (*Id.*; dkt. no. 41 at 3.)

In the November 2010 Sheriff's election, Plaintiff supported Andy Rorex in his bid for the Sheriff position over the incumbent, Ed Kilgore, who was then Plaintiff's supervisor. (Dkt. no. 32 at 2.)

On October 1, 2012, Sergeant Lee Dove of the County Sheriff received a letter from an unknown individual that contained a single item, a digitally printed photo of "Santa Muerte," who Dove recognized as the Saint that drug traffickers worshipped. (Dkt. no. 41-1 at 11.) Dove had recently seized a large sum of money during a traffic stop and was not certain if the letter was related to that stop but he construed the letter as a "death" threat and reported its receipt. (*Id.*) Plaintiff subsequently admitted to having sent the letter although he claimed the letter was meant as a "prank." (Dkt. no. 41-1 at 26; dkt. no. 32 at 2; dkt. no. 45 at 3.) In April 2013, Plaintiff was charged with harassment by Washoe County Sheriff's Office and pleaded nolo contendere.[1] (Dkt. no. 41-1 at 36-44.)

On June 5, 2013, Humboldt County's District Attorney Michael Macdonald authored a letter to Chief Eric Silva of the WPD ("Letter") in which he discussed Plaintiff's conviction of harassment and his duty to disclose Plaintiff as "'Brady' cop in future investigations."[2] (Dkt. no. 41-1 at 46-47.) He requested that Silva "not assign Detective Bourland to future cases that are likely to involve his potential courtroom testimony." (*Id.*)

Based primarily on Macdonald's Letter, Plaintiff asserts two claims for First Amendment retaliation and defamation plus under 42 U.S.C. § 1983 and three state law claims against Humboldt County in his First Amended Complaint ("FAC"). In support of his second claim for relief, Plaintiff alleges that his support for Rorex for Sheriff in the November 2010 election was protected by the First Amendment, and Macdonald

---

[1] The County Sheriff, the Humboldt County District Attorney's Office and the WPD requested Washoe County Sheriff's Office to conduct a criminal investigation into the incident. (Dkt. no. 41-1 at 34.)

[2] *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny require the prosecution to disclose material and favorable information to the defendant.

interfered with his job with the WPD to punish him for having supported Kilgore's opponent. (Dkt. no. 32 at 5.) Plaintiff further claims Macdonald made false statements of facts about him in connection with Macdonald's constitutional violations in support of his defamation plus claim. (*Id.* at 5-6.) In his opposition brief, Plaintiff reiterated that "[t]he adverse employment action at issue is the communications with Chief Silva about Bourland being a *Brady* cop." (Dkt. no. 45 at 2.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Defendant raises several arguments in its Motion. However, the Court will address two of the arguments that are dispositive of Plaintiff's claims against Humboldt County under 42 U.S.C. § 1983: (1) there is no causal connection between Plaintiff's exercise of his First Amendment rights and the adverse action taken by Macdonald; and (2) Macdonald's conduct with respect to the Letter is not sufficient to impose liability on Humboldt County.

Plaintiff brings his two federal claims under 42 U.S.C. § 1983, which provides for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Section 1983 establishes liability for any person who, acting under the color of law, deprives a citizen of a right, privilege or immunity protected by the Constitution or federal law. 42 U.S.C. § 1983. Plaintiff's two section 1983 claims rely on substantive rights conferred by the First Amendment. (Dkt. no. 32 at 5-6.) As a municipal entity, however, Humboldt County "may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Plaintiff cannot establish a First Amendment violation or municipal liability.

///

### A. First Amendment Violation

A First Amendment retaliation claim against a government employer involves a series of five questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Desrochers v. City of San Bernardino*, 572 F.3d 703, 708-09 (9th Cir. 2009) (quoting *Eng*, 552 F.3d at 1070). All five factors are necessary — "failure to meet any one of them is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc), *cert. denied sub nom. City of Burbank v. Dahlia*, 134 S. Ct. 1283 (2014). A plaintiff must satisfy the first three steps of the five-step test. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (citing *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009)). If the plaintiff succeeds, then the burden shifts to the government to establish the fourth and fifth steps. *Id.* (citing *Robinson*, 566 F.3d at 822).

Defendant argues that Plaintiff cannot satisfy the third factor because there was no connection between Plaintiff's support of Rorex in the November 2010 election and Macdonald's letter. The Court agrees with Defendant.

Determining whether Plaintiff's speech was a "substantial or motivating factor in the adverse employment action" is a factual inquiry. *Eng*, 552 F.3d at 1071 (citation and internal quotation marks omitted). "[A]n adverse employment action is an act that is reasonably likely to deter employees from engaging in constitutionally protected speech." *Coszalter*, 320 F.3d at 970. A plaintiff may establish that retaliation was a substantial or motivating factor behind an adverse employment action with evidence that:

> (1) the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) the employer expressed opposition to the speech, either to the speaker or to others; or (3) the proffered explanations for the adverse action were false and pretextual.

///

*Ellins*, 710 F.3d at 1062 (citing *Coszalter*, 320 F.3d at 977). Evidence of only one of these factors "may be sufficient to allow a plaintiff to prevail in a public employee retaliatory speech claim." *Id.* at 1063 (citing *Marable v. Nitchman*, 511 F.3d 924, 930 (9th Cir. 2007)).

Here, there is no dispute that Plaintiff supported Rorex in his bid for the County Sheriff' position in the November 2010 election. However, Defendant argues that the FAC fails to allege any connection between Plaintiff's participation in that election and Macdonald or the Letter to Silva. (Dkt. no. 41 at 7.) In his response brief, Plaintiff pointed out alleged conduct of Kilgore and his undersheriff Kull — including Kilgore's expression of surprise that Rorex ran against him and admonishment to the SRT team that if they did not support him, they should leave — to show that they took retaliatory actions against Plaintiff for his support of Rorex. (Dkt. no. 45 at 2-4.) However, Plaintiff does not demonstrate why alleged actions of Kilgore and Kull have anything to do with Macdonald or the adverse employment action that Macdonald took against Plaintiff by sending the Letter. Plaintiff argues that Kull's reference to Rorex's campaign in his statement relating to the Santa Muerte incident should lessen the impact of the time lapse of over two and a half years between Plaintiff's protected activity (his support of Rorex in the November 2010 election) and the adverse employment action (Macdonald's June 2013 Letter). But again, Plaintiff has not demonstrated any link between Kull's conduct and Macdonald's Letter. In fact, there is no allegation in the FAC that either Kilgore or Kull had any involvement in the Letter, or that Macdonald even knew that Plaintiff supported Rorex for Sheriff in his bid against Kilgore.[3]

In sum, Plaintiff offers no evidence to link Macdonald and his alleged conduct to Plaintiff's support of Rorex. Plaintiff has failed to satisfy his burden to establish the third factor of his First Amendment retaliation claim. Plaintiff thus cannot establish a First Amendment violation. *See Ellins*, 710 F.3d at 1056.

---

[3]Macdonald asserts he was not aware that Plaintiff supported Rorex for Sheriff in the November 2010 election. (Dkt. no. 48-1.)

**B. Municipal Liability**

Even if Plaintiff can establish a First Amendment violation, he cannot establish that Humboldt County is liable for Macdonald's alleged conduct.

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Under *Monell*, Humboldt County may be liable if its policy, practice, or custom was a moving force behind the purported First Amendment violation at issue here. *Dougherty*, 654 F.3d at 900. "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that the plaintiff possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Id.* (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997)) (alterations omitted).

Municipal liability may, however, extend to isolated constitutional violations caused by a person with final policymaking authority. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("We [the Court] have assumed that an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business."). In fact, in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986), "the Supreme Court held that a single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under *Monell*, even though the decision is not intended to govern future situations." *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (citing *Pembaur*, 475 U.S. at 480-81). Under this rubric, "[m]unicipal liability under section 1983 attaches only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Gillette*, 979 F.2d at 1347 (quoting *Pembaur*, 475 U.S. at 483-84) (internal quotation

marks omitted). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur*, 475 U.S. at 483.

Plaintiff argues that Humboldt County is liable because Macdonald was the final policymaker for Humboldt County. He points to allegations in his FAC: "Under Nevada law, district attorneys and assistant district attorneys are final policymakers for the County with respect to the matters surrounding prosecution of criminal cases and Macdonald is the final policymaker as it relates to interactions with Chief Silva on behalf of the County." (Dkt. no. 45 at 7; dkt. no. 32 at 1-2.) However, Plaintiff is not challenging Macdonald's decisions on matters involving prosecution of criminal cases. Instead, he is challenging Macdonald's decision to retaliate against him for exercising his First Amendment rights by authoring the Letter and communicating with Silva about Plaintiff's alleged conduct in the "prank." (Dkt. no. 45 at 2; dkt. no. 32 at 2-3.) The Court agrees with Defendant that Plaintiff's allegations do not show that Humboldt County had a policy or practice of interfering with Plaintiff's exercise of his First Amendment rights. Plaintiff cannot seek to impose liability against Humboldt County under *Monell*.

### C. State Law Claims

This Order resolves the two claims under 42 U.S.C. § 1983. The Court will not address Defendant's arguments with respect to Plaintiff's three state law claims as the Court declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c).

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Defendant's Motion for Summary Judgment (dkt. no. 41) is granted as to the second claim for relief (First Amendment retaliation) and fourth

///

claim for relief (defamation plus). The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

The Clerk is instructed to enter judgment in favor of Defendant Humboldt County on the second and fourth claims for relief in accordance with this Order and close this case.

DATED THIS 28th day of March 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE